UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOASNI SUAREZ FERNANDEZ,<br>Petitioner,<br>v.<br>WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY,<br>Respondent. | Case No. 1:26-cv-8506-DC-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

On December 6, 2022, Border Patrol agents caught petitioner entering the United States without permission, took him into custody, and released him into the United States. Petitioner filed an asylum application and an application to register permanent resident status. On August 20, 2026, ICE re-arrested petitioner. Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241 for his release. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

On December 6, 2022, petitioner entered the United States by boat on the Florida coast. ECF No. 5-1 at 8. Border Patrol agents encountered him and took him into custody. *Id.* The Department of Homeland Security ("DHS") issued an expedited removal order that day. ECF No. 1 at 45-46. Petitioner stated a fear of returning to his home country. *Id.* at 50. Respondent does not explain what happened to the expedited removal order in light of petitioner's credible

fear, but the parties agree that petitioner was released into the United States and does not currently have a removal order.[1] *See* ECF No. 1 at 15, 51; ECF No. 5 at 1 (asserting that petitioner is detained under 8 U.S.C. § 1226(a)); *see also* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last checked Nov. 4, 2026).

Petitioner filed an asylum application in February 2023, which remains pending. ECF No. 1 at 15, 54. DHS issued him a social security number in September 2023, *id.* at 56, and employment authorization on June 20, 2024, *id.* at 57-58. The employment authorization is valid until June 19, 2029. *Id.* at 57. On December 15, 2023, petitioner filed a notice to adjust his status to lawful permanent resident pursuant to the Cuban Adjustment Act, which remains pending. *Id.* at 15, 72; ECF No. 5-1 at 2. Petitioner obtained a valid driver's license on January 21, 2025. ECF No. 1 at 59. Petitioner has worked and paid taxes during his time in the United States. *See* ECF No. 1 at 60-69, 77-79. Petitioner has no criminal history. *Id.* at 70; ECF No. 5-1 at 2.

On August 18, 2026, ICE stopped petitioner's car and took him into custody. ECF No. 5-1 at 2. The record discloses no reason for the vehicle stop or petitioner's re-detention other than immigration enforcement. *See id.* Petitioner was in compliance with his immigration registration obligations. *Id.* There is no arrest warrant in the record, nor is there an ICE custody determination form. On September 24, 2026, ICE issued petitioner a notice to appear in immigration court.[2] ECF No. 5-1 at 4. On September 28, 2026, an immigration judge denied petitioner bond on the basis that he "had not met his burden with regards to flight."[3] ECF No. 5-2

---

[1] Petitioner alleges in his verified petition that DHS released him from custody. ECF No. 1 at 15. The record shows that petitioner was at liberty in the United States with pending asylum and adjustment of status applications when ICE re-detained him in August 2026, proving that DHS necessarily released him from custody after his December 2022 immigration detention. Concerningly, the Forms I-213 filed by petitioner do not discuss his release from immigration custody. *See* ECF No. 5-1 at 7 (December 2022 Form I-213); ECF No. 5-1 at 1 (August 2026 Form I-213). Respondent notes that petitioner "was re-detained in 2026" but provides no information regarding when he was released from immigration custody and on what terms. *See* ECF No. 5 at 1. The only notice to appear ("NTA") in the record, from September 24, 2026, states that it "is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution and torture." ECF No. 5-1 at 4.

[2] Respondent provides no explanation for why ICE issued the NTA over a month after petitioner was taken into custody. *See* ECF No. 5.

[3] Petitioner has attached ten supportive letters from sponsors, employers, and others in the

at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention by ICE without a pre-deprivation hearing violates due process.[4] ECF No. 1 at 7. Respondent opposes the petition on the ground that petitioner received a bond hearing under section 1226(a), pursuant to a framework that is "generally constitutional." ECF No. 5 at 2. Respondent also argues that because petitioner did not appeal the bond denial to the Board of Immigration Appeals, he has failed to exhaust his claim. *Id.* at 1-2. Respondent does not address the due process claim except to state that petitioner "cannot show a denial of due process on this record." *Id.* at 2.

I first address respondent's argument that petitioner's due process claim must be exhausted by appealing his statutory immigration bond hearing to the BIA. *See* ECF No 5 at 1-2. Section 2241 does not require exhaustion of administrative remedies prior to filing a habeas petition. *Compare* 28 U.S.C. § 2241 *with* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of

---

community. *See* ECF No. 1 at 77-79, 93-105.

[4] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

state court remedies). Accordingly, "[t]he exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). To decide whether exhaustion is required, courts consider the *Puga* factors, evaluating whether: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.[5] *Id*. (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). "[A]n exception to the exhaustion requirement has been carved for constitutional challenges to the Immigration and Naturalization Act and [ICE] procedures because the BIA does not have jurisdiction to determine the constitutionality of the statutes it administers." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (cleaned up); *see also Matter of Fede*, 20 I. & N. Dec. 35 (BIA 1989) (explaining why neither an immigration judge nor the BIA have the legal authority to consider constitutional challenges to the immigration regulations they administer).

Petitioner received a statutory bond hearing under 8 U.S.C. § 1226(a), five weeks after his re-detention, at which he bore the burden to prove that he is not a flight risk. *See* ECF No. 5 at 1; ECF No. 5-2 at 1. However, his petition asserts that in light of his significant liberty interest in continued release, he had a due process right to a pre-deprivation hearing before being re-detained by ICE. *See* ECF No. 1 at 21, 23. If petitioner was re-detained in violation of his liberty interest, he is entitled to a constitutionally adequate bond hearing that places the burden of proof on the government by clear and convincing evidence. *See Martinez v. Clark*, 124 F.4th 775, 780 (9th Cir. 2024) (procedural due process requires a bond hearing where the government bears the burden to prove by clear and convincing evidence that petitioner is a danger or a flight risk);

---

[5] Respondent does not cite *Puga* or explain how the factors apply in this case. *See* ECF No. 5 at 1-2.

*Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (E.D. Cal. 2022) (collecting cases). As this constitutional claim cannot be addressed by the BIA, *see Sola*, 720 F.3d 1135, I find that exhaustion would be futile and any such requirement should be waived.

Turning to the merits of the petition, I first determine the statutory basis for petitioner's detention. Respondent's statement regarding the detention authority is telling: respondent notes that the immigration judge held a bond hearing under 8 U.S.C. § 1226(a), and as "DHS did not challenge the IJ's finding that [petitioner] is eligible for a bond hearing, Respondent now concedes Petitioner is detained under 8 U.S.C. § 1226(a)." ECF No. 5 at 1. However, this is not the "true cause of the detention" as required by this court's order, ECF No. 4, and 28 U.S.C. § 2243. This strongly suggests that respondent is advancing a *post hoc* rationalization based on what happened in immigration court on September 24, 2026, *see* ECF No. 5-2, not the true detention authority exercised by ICE when it re-detained petitioner on August 18, 2026. *See Betancourt Ulloa v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3360-DAD-CKD, 2026 WL 2389805 (E.D. Cal. Aug. 17, 2026) (collecting cases rejecting *post hoc* rationalizations for immigration detention authority).

Based on the record, the true cause of the detention appears to be 8 U.S.C. § 1225(b)(1). No warrant was obtained for petitioner's re-detention, *see* ECF No. 5-1 at 7, as required by 8 U.S.C. § 1226(a), and no custody determination was conducted by ICE and memorialized on a DHS Form I-286.[6] If ICE in fact detained petitioner under section 1226(a), as respondent now advances, the lack of an initial custody determination itself is a basis for habeas relief. *See Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-5661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (holding that failure to comply with express terms of

---

[6] On July 8, 2025, ICE instructed its employees not to conduct initial custody determinations using DHS Form I-286 for noncitizens who are "present in the United States who [have] not been admitted" because "Form I-286 applies by its terms only to custody determinations under INA § 236 [8 U.S.C. § 1226(a)] and part 236 of title 8 of the code of Federal Regulations." *See Interim Guidance Regarding Detention Authority for Applicants for Admission* at https://perma.cc/5GKM-JYGX (last checked Oct. 20, 2026). Petitioner's notice to appear charges him with being present "without being admitted or paroled." ECF No. 5-1 at 4. There is no evidence in the record that petitioner was provided an initial custody determination or Form I-286. *See* ECF No. 5.

section 1226 prevents the court from concluding that the noncitizen was detained on that basis).

Conversely, if ICE in fact detained petitioner under section 1225(b), and the 1226(a) argument by the government is a *post hoc* rationalization in light of subsequent case law, then this also supports habeas relief, as respondent's detention of petitioner under the wrong statutory authority cannot be remedied by a delayed section 1226(a) bond hearing. *See Betancourt Ulloa v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3360-DAD-CKD, 2026 WL 2389805 (E.D. Cal. Aug. 17, 2026) (collecting cases rejecting *post hoc* rationalizations for immigration detention authority); *see also Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, 2026 WL 2494984, at *3 (E.D. Cal. Aug. 25, 2026). Whichever statutory provision ICE used to detain petitioner, it appears that ICE has not provided petitioner the statutory or regulatory process that he was due.

Turning to the procedural due process claim, I must first consider whether there exists a protected liberty interest under the Due Process Clause, and, second, I must evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Respondent fails to discuss the impact of petitioner's original release from immigration custody. ECF No. 5 at 1-2. DHS released petitioner into the United States years prior to his re-detention in August 2026. ECF No. 1 at 37. During those years at liberty, petitioner worked with authorization, filed taxes, filed applications for asylum and to adjust his status, and developed "substantial economic and community ties." *Id.* at 37, 60-69, 77-79, 93-105. Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471,

481-82 (1972)).

Petitioner's initial release and time out of custody have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the years that he was at liberty in the United States on his own recognizance. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest

in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner permission into the United States, the government necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

Respondent offers no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's detention; more generally, it gives the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See* ECF No. 5. Accordingly, the probable value of additional procedural safeguards is high. *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden it would bear as a result of being required to provide a constitutionally adequate pre-deprivation hearing. *See* ECF No. 5.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's detention without a pre-deprivation hearing violated his due process rights. Given this finding,

the court must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 7, 13. Respondent argues that petitioner has already received the process he is due. ECF No. 5 at 2. However, the statutory bond hearing was insufficient to render constitutional due process as it put the burden on petitioner, not the government. *See* ECF No. 5-2 at 1; *see also Matter of Siniauskas*, 27 I. & N. Dec. 207, 207 (BIA 2018) ("An alien in a custody determination under . . . 8 U.S.C. § 1226(a), must establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger . . . .").

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

I do not find, and respondent does not argue, that there was any necessity of quick action, or that providing a pre-deprivation hearing was impractical. Petitioner has no criminal history. ECF No. 1 at 31; ECF No. 5-1 at 3. It appears that the only reason that ICE stopped petitioner's car was to re-detain petitioner. ECF No. 5-1 at 2. Petitioner asserts, and respondent does not dispute, that during his years in the United States he worked, paid his taxes, and established considerable ties with his community. Respondent has provided no reason for petitioner's re-

detention without a pre-deprivation hearing.

Accordingly, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing, and the government has failed to provide a prompt post-deprivation hearing that comports with due process. *See Munaf*, 553 U.S. at 693; *see also Lopez Alonza v. Warden*, No. 1:26-cv-3059-DJC-JDP, 2026 WL 2390826, at *5 (E.D. Cal. Aug. 17, 2026), *report and recommendation adopted*, 2026 WL 2446693 (E.D. Cal. Aug. 20, 2026). Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 240-366-669) from its custody on the same conditions as prior to his detention. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Golden State Annex Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: November 9, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE